SOUTHLAND OIL COMPANY (A Division of VGS Corporation), Plaintiff-Appellant,

v.

DEPARTMENT OF ENERGY et al., Defendants-Appellees.

No. DC–55.

Temporary Emergency Court of Appeals.

Argued April 30, 1979.

Decided June 29, 1979.

Rehearing Denied Aug. 2, 1979.

Edwin Jason Dryer, Washington, D. C., on brief, for plaintiff-appellant.

Maryann Clifford, Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., C. Max Vas-sanelli and Stephanie Lachman Golden, Washington, D. C., on brief, for defendants-appellees.

Before BECKER, BONSAL and LACEY, Judges.

BONSAL, Judge:

Southland Oil Company ("Southland") appeals from an order of the United States District Court for the District of Columbia granting summary judgment to the Department of Energy ("DOE"). Southland is a small independent refiner operating three refineries in Mississippi with a combined capacity of approximately 21,000 barrels per day. In 1973, Southland completed a five-year expansion of its refinery capacity. Since its daily output is less than 175,000 barrels per day, Southland is a "small refiner". 10 C.F.R. § 211.62.

Southland sought relief from its obligations to purchase entitlements under the Entitlements Program, 10 C.F.R. § 211.67. Upon DOE's refusal to grant relief, Southland instituted this action seeking a declaratory judgment that DOE's refusal was arbitrary and capricious, in excess of statutory authority, and contrary to statutory mandate. The District Court granted summary judgment to DOE holding that DOE's refusal to grant Southland exception relief had a rational basis and was supported by substantial evidence. This appeal followed. We affirm.

## BACKGROUND

The Entitlements Program of DOE was promulgated in November 1974 by its predecessor, the Federal Energy Administration ("FEA"), to alleviate the unequal economic impact that the two-tier pricing system had upon oil refiners. (Hereinafter, both DOE and its predecessor FEA will be referred to as DOE.)

The Entitlements Program requires a refiner refining more "old oil" than the national average during a particular month to buy additional entitlements from a refiner refining less "old oil" than the national

average for that month with a view to equalizing the cost of crude oil to each refiner.

The two-tier pricing system is explained in *Consumers Union of United States v. Sawhill*, 525 F.2d 1068 (TECA 1975). The Entitlements Program is explained in *Husky Oil v. Department of Energy*, 582 F.2d 644 (TECA 1978), *Cities Service Co. v. Federal Energy Administration*, 529 F.2d 1016 (TECA 1975), *cert. denied*, 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1976); and *Pasco, Inc. v. Federal Energy Administration*, 525 F.2d 1391 (TECA 1975). These explanations need not be repeated here.

■ A small refiner may be granted an exception from Entitlements purchases if it can show that "serious hardship or gross inequity," would result from requiring it to purchase entitlements. 10 C.F.R. § 205.50. In considering the granting of exception relief, DOE looks to the historical performance of the small refiner and the effect that the requirement to purchase entitlements would have on that performance. The standard applied by DOE is stated in *Delta Refining Co.*, 2 FEA ¶ 83,275 (September 11, 1975). The *Delta* standard provides that a small refiner is granted the minimum amount of exception relief necessary to permit it to attain the lesser of its historic profit margin or its historic return on invested capital.

*Southland's Application for Exception Relief*

In September, 1976, Southland applied for exception relief for the year 1975. In its request, Southland sought certain adjustments in it historic profit margin which it believed were necessary to set forth a more representative picture of its actual financial condition. On November 5, 1976, DOE refused to make these adjustments on the ground that Southland did not meet the criteria established in *OKC Corp.*, 2 FEA ¶ 80,604 (June 5, 1975). Applying the *Delta* standard, DOE determined that Southland was able to achieve its historic profit margin and therefore denied exception relief. In addition, DOE directed Southland to dis-

gorge exception relief previously granted for the year 1975 in the amount of $3,464,670 to be accomplished by Southland purchasing entitlements of $3,464,670 over a 12-month period. Southland appealed to the Office of Exceptions and Appeals which on April 8, 1977 reduced the purchase requirement, and on October 14, 1977 reduced the purchase requirement still further to a total of $679,100.

Southland instituted this action in the United States District Court for the District of Columbia, contending that DOE should have first made the adjustments to Southland's historic profit margin before applying the *Delta* standard to determine whether Southland was entitled to exception relief. Southland argued that DOE should have excluded the years of its expansion and should have made adjustments for the change in its inventory accounting principles from "first-in first-out" (FIFO) to "last-in last-out" (LIFO) and for its abnormal bad debt charge of $500,000 in 1974.

On December 17, 1978, the District Court granted summary judgment to DOE, finding that the rejection of adjustments requested by Southland in the calculation of the historic profit margin had a rational basis and that its denial of exception relief was based upon substantial evidence.

## DISCUSSION

■ In order to be entitled to adjustments in the *Delta* standard, a small refiner must demonstrate that unusual circumstances exist which make the actual historic profit margin unrepresentative of the firm's actual financial condition. *See, Famariss Oil Corp.*, 2 FEA ¶ 83,080 (March 28, 1975); *Powerine Oil Corp.*, 2 FEA ¶ 83,096 (March 28, 1975); *Husky Oil Corp.*, 2 FEA ¶ 83,146 (March 28, 1975), and *OKC Corp.*, *supra*.

Southland claims unusual circumstances exist, viz, its expansion, its change in inventory accounting principles from FIFO to LIFO, and an abnormal bad debt charge of $500,000 for 1974 which rendered its actual historic profit margin lower than was repre-

sentative of the firm's actual financial condition.[1]

*Southland's Requested Adjustment for the Expansion Years*

Southland requests an adjustment for the years 1968 through 1971 during which years it increased its refining capacity from 8,000 barrels per day to 21,000 barrels per day. In order to qualify for an adjustment for a small refiner's expansion years, the small refiner must satisfy the four considerations spelled out in *OKC Corp., supra*. The fourth of these considerations is:

"(iv). alleviate the impact of FEA regulatory requirements which would prevent the firm from attaining a reasonable operating and financial posture in the current period in view of its anticipated sales volume, current refining operations, and previous business activities."

Here, DOE determined that Southland did not satisfy this last consideration and the inclusion of the years 1968 through 1971 did not prevent Southland from attaining a reasonable operating and financial posture.

Southland's historic profit margin (without the requested adjustment) was considerably higher than the historic profit margins of other small refiners who have sought adjustments and exception relief on similar grounds. *See, e.g., Famariss Oil Corp., supra; Powerine Oil Co., supra;* and *Husky Oil Co., supra.*

Southland cites *Edgington Oil Co.,* 2 FEA ¶ 83,276 (September 18, 1975) wherein DOE allowed Edgington an adjusted historic profit margin which was approximately a percentage point higher than Southland's historic profit margin. Edgington is a small refiner in Long Beach, California with two refineries with a combined refinery capacity of 29,500 barrels per day. Edgington completed a significant expansion program during 1973, so that its reported profits of that year were unrepresentative. Therefore, DOE applied a weighted average historic profit margin.

The Edgington decision is readily distinguishable. DOE granted Edgington an adjustment for the year 1973 while Southland sought an adjustment for each of the years 1968 through 1971. Moreover, after the adjustment in Edgington for the year 1973, the resulting historic profit margin of Edgington and the historic profit margin of Southland (with the inclusion of the years 1968 through 1971) are comparable. Therefore, DOE had a rational basis for granting Edgington the adjustment for the year 1973 and for denying Southland the adjustment for the years 1968 through 1971.[2]

*"Serious Hardship or Gross Inequity"*

A small refiner must demonstrate that it would be subjected to "serious hardship or gross inequity" if it were required to purchase entitlements. 10 C.F.R. § 205.50. Here Southland must demonstrate "serious hardship or gross inequity" by showing that the requirement to purchase entitlements would cause it to attain a profit lower than its historic profit margin. *Delta Refining Co., supra.* Southland has not demonstrated this. Therefore, as the District Court found, Southland has failed to establish "serious hardship or gross inequity."

We agree with the District Court's holding that DOE's refusal to grant Southland exception relief had a rational basis and was supported by substantial evidence. Accordingly, the decision granting DOE summary judgment is affirmed.

---

1. As to Southland's claim with respect to LIFO and FIFO, and the bad debt charge, DOE properly relied upon Southland's financial statements as they were originally submitted, which were prepared in accordance with generally accepted accounting procedures, and properly denied these requested adjustments.

2. DOE states that the Edgington decision is currently under review in light of the standards set forth in *OKC Corp., supra.*